UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL R. DIAZ MARTI, ET AL., | * |
| Plaintiffs | * |
| v. | * Civ. No. 98-1487 (PG) |
| SILA M. CALDERON, ET AL., | * |
| Defendants | * |

## OPINION & ORDER

Before the Court are Codefendant Sila M. Calderón's ("Calderón") and Codefendant Jorge Collazo Torres' ("Collazo") (jointly "Codefendants") Motion for Summary Judgment. (Dkt. 11) Plaintiffs filed what generously may be described as a reply to Codefendants' motion. (Dkt. 14) Codefendants filed an opposition to the reply. (Dkt. 15)

## FACTS

Codefendant Municipal Guard Juan Quiñones Ortega ("Quiñones") arrested Coplaintiff Angel R. Díaz Marti ("Díaz") on May 4, 1997 as a result of a traffic stop. Díaz subsequently filed this action, alleging that Quiñones, the Municipality of San Juan, Police Security Commissioner Jorge Collazo Torres, Mayor Sila M. Calderón, and numerous "John Doe" police officers violated his constitutional rights under the Fifth, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. As neither party filed a statement of material facts, as is required under Local Rules 311.12, the facts below are set forth as best the Court can discern.

On May 4, 1997, Quiñones stopped Díaz while Díaz was driving along Paseo de Diego Street in Río Piedras. Though the parties dispute the nature of the stop, Quiñones contends that Díaz committed a traffic violation. According to Quiñones, when Quiñones asked for Díaz' driver's license



98-1487 (PG) 2

and car registration, Díaz drove away from the officer. At some point Quiñones discovered that Díaz did not have either document. Díaz then proceeded to drive to his place of business, a jewelry store, at which time he entered the store.

When Quiñones arrived along with another officer, Anibal Alvarez, at the store, Díaz' father and wife intervened with attempts to arrest Díaz. Díaz was finally arrested by the police. However, as a result of his obstruction, Díaz' father, Antonio Díaz Rivas ("Díaz the First") was charged with obstructing the arrest of his son. The charges were later dismissed against both father and son.

Díaz filed an administrative complaint against the officers, Quiñones and Alvarez, who were investigated by the Office of Administrative Investigation of the Municipal Guard. The complaint was later dismissed.

This complaint then followed, alleging that the officers acted in disregard of Plaintiffs' constitutional rights. Plaintiffs also allege that the Municipality of San Juan, Calderón and Collazo, sued in their official capacities, are liable for civil rights violation under a "failure to train" theory.

The Municipality of San Juan, has in effect bylaws which cover the duties and responsibilities of the municipal guards. Those duties are found at ARTICLE III, Section 2, which includes the following: to respect the civil rights of citizens; to take necessary steps to guarantee the protection of persons; to treat courteously the public and aid any person who so needs; to counsel and advise on how to obey the law and improve public safety; and to observe an exemplary conduct at all times. The Municipality requires that all its Municipal Guard Corps members graduate from the Commonwealth Police Academy. Additionally, the Municipality requires each guard to complete a course at its Retraining Institute. Quiñones graduated from the Police Academy and completed the Retraining Institute course.

98-1487 (PG)                                                                                              3

## SUMMARY JUDGMENT STANDARD

Summary judgment is "a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Messnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992). In essence, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). *See also Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986). Therefore, the trial court must go beyond the façade of the pleadings, and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992), *cert. denied*, 507 U.S. 1030 (1993). Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). *See also Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir. 1999), *reh'g denied by* 171 F.3d 710 (1st Cir. 1999), *cert. denied* __ U.S. __, 120 S. Ct. 44 (1999); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In order to prevail on a motion for summary judgment, the moving party first must make a preliminary showing that there is no genuine issue of material fact which requires resolution at trial. *See Cadle Co. v Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). Once the moving party has properly supported it's motion, "the burden shifts to the nonmovant to demonstrate, through specific facts, that a trial worthy issue remains." *Id. See also Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 14 (1st Cir. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "There must be 'sufficient

AO 72A
(Rev. 8/82)

98-1487 (PG) 4

evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50).

## BRIEF DISCUSSION

Codefendants Calderón and Torres have moved for summary judgment on all claims in this case. (Dkt. 11) After a thorough review of the record and the applicable case law, the Court grants Codefendants' motion. The facts and precedent favor this decision, as does Plaintiffs' inexplicable failure to reply to Codefendants' motion. Nevertheless, a brief discussion is necessary,

Plaintiffs have sued Codefendants in their official capacities. Thus, Plaintiffs have brought suit against the Municipality of San Juan only, for a suit against an official in their official capacity is a suit against the state (or in this case the municipality).

### A.   MUNICIPAL LIABILITY

The Supreme Court set forth the requirements for municipal liability in several recent decisions. *See Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397 (1997); *City of Canton, Oh. v. Harris*, 489 U.S. 378 (1989); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). These decisions make clear that a plaintiff who brings suit against a municipality faces serious hurdles.

At its core, the theory of municipal liability is straightforward; a municipal policy that causes any constitutional violation can form the basis of § 1983 liability. *See City of Canton*, 489 U.S. at 387-89. "A municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *See Brown*, 520 U.S. at 403 (citing *Monell*, 436 U.S. at 692). Rather, a plaintiff seeking redress under a § 1983 municipal liability theory must identify a policy or custom that caused his or her injury. *See Brown*, 520 U.S. 403 (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986); *City of Canton*, 489 U.S. at 389). As stated by the *City of Canton* Court, Plaintiffs must show

98-1487 (PG) 5

(1) inadequate training, (2) deliberate indifference, and (3) causal relationship. The failure to demonstrate any of the three requirements ends a plaintiff's claim. A municipality's inadequate training of police may provide the basis for a § 1983 claim, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. Not only must the Municipality fail to train, that failure to train must be a "deliberate" or "conscious" choice by the municipality. *See id.* at 389.

Deliberate indifference may be defined as the "failure to provide adequate training in light of foreseeable serious consequences that could result from the lack of instruction" or when a "city fails to act in response to repeated complaints of constitutional violations by its officers." ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 8.5, at 451-53 (2d. ed. 1994). The Ninth Circuit has described "deliberate indifference" as "conduct that is so wanton or reckless with respect to unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Redman v. City of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc).

For reasons unknown, beyond a few bald allegations, Plaintiffs have failed to put forth any evidence demonstrating that the Municipality's alleged inadequate training of police officers amounted to deliberate indifference to Plaintiffs' constitutional rights. Moreover, Codefendants have shown that Quiñones was trained in the procedures that the Municipality designed. So, not only were training procedures in place, but also they were followed in training the particular officer in question. At the very least the Municipality had an adequate training policy. The Municipality need have only an adequate policy, not a perfect one. *See City of Canton*, 389 U.S. at 390. An excerpt from *City of Canton* is telling:

> That particular officers may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.... It may be, for example, that an otherwise

98-1487 (PG) 6

sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.... [A]dequately trained officers occasionally make mistakes; the fact they do says little about the training program or the legal basis for holding the city liable.

*City of Canton*, 489 U.S. at 391 (citations omitted). Under the facts of this case, the Municipality had a training program that was adequate. The Court need say no more.

### CONCLUSION

For the reasons stated above, the Court GRANTS Codefendant Calderón's and Codefendant Torres' Motion for Summary Judgment. The claims against these two codefendants shall be **DISMISSED**, as they are claims against the Municipality of San Juan.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March /3 , 2000.

JUAN M. PEREZ-GIMENEZ
U.S. District Judge

AO 72A
(Rev. 8/82)